IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | NO. 3:04-cr-00142 |
| | ) | JUDGE RICHARDSON |
| MACK STONE | ) | |

### **MEMORANDUM OPINION**

Before the Court is Defendant Mack Stone's Motion for Imposition of a Reduced Sentence Pursuant to Section 404 of the First Step Act (Doc. No. 102, "the Motion"). The Government responded in opposition (Doc. No. 111), and Defendant replied (Doc. No. 112) and then supplemented his reply (Doc. No. 113, Doc. No. 114). As discussed below, the Motion will be granted without a hearing, and the Court will impose a reduced sentence of 30 years' imprisonment for his sole count of conviction, conspiracy to distribute 50 grams or more of crack cocaine. All other provisions of the judgment will remain unchanged.

### **FACTUAL AND PROCEDURAL BACKGROUND**

Defendant was indicted August 25, 2004 on a single count, conspiracy to distribute 50 grams or more of crack cocaine, contrary to 21 U.S.C. § 841(a)(1), in violation of 21 U.S.C. § 846. (Indictment, Doc. No. 16).[1] In October 2004, the United States filed an information alleging that Defendant had two prior felony drug convictions, (Information Alleging Prior Convictions, Doc. No. 23), which, pursuant to § 841(b)(1)(A) at that time, increased Defendant's mandatory

---

[1] The penalties for 21 U.S.C. § 846 are statutorily set to match the penalties for the statute the defendant conspired to violate—meaning 21 U.S.C. § 841(a)(1) in Defendant's case. The statutory penalties for 21 U.S.C. § 841(a)(1), set forth in 21 U.S.C. § 841(b)(1), are tiered, with increasing punishments corresponding to increasing quantities of the controlled substance at issue. In 2004, 50 grams was the threshold for the top tier of punishments for crack cocaine; as discussed below, since the Fair Sentencing Act was enacted about a decade ago, 50 grams places a defendant only in the intermediate tier.

minimum sentence upon conviction to life imprisonment. On November 2, 2004, Defendant was convicted by a jury, which found that his offense involved 50 grams or more of crack cocaine. (Jury Verdict, Doc. No. 43). Although the jury made no specific quantity finding, the Presentence Report attributed 100 ounces (2.835 kilograms) of crack cocaine to Defendant's conspiracy, (Doc. No. 60 at 8), and at the original sentencing hearing held on February 4, 2005, Judge Haynes found a Base Offense Level consistent with at least 1.5 kilograms of crack cocaine, (Doc. No. 72 at 41). Judge Haynes imposed a sentence of life imprisonment, (Judgment, Doc. No. 59), which was statutorily mandated at the time based on the jury's finding of 50 grams or more and Defendant's two prior convictions..

Defendant now contends that he is eligible for relief under Section 404 of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat 5194. Section 404 gives retroactive effect to segments of the Fair Sentencing Act of 2010, Public Law 111–220, 124 Stat. 2372 ("FSA"), which increased the respective threshold quantities of crack cocaine required to trigger each of the tiered statutory maximum and minimum punishments prescribed by 21 U.S.C. § 841(b)(1).[2] *See* First Step Act § 404 (at times hereinafter "§ 404"); FSA § 2.

Section 404 permits courts to grant relief for defendants convicted of a "covered offense," meaning "a violation of a Federal criminal statute, the statutory penalties for which were modified by Section 2 or 3 of the [FSA], that was committed before August 3, 2010[.]" § 404. By its terms, Section 404(b) makes a defendant eligible for relief provided only that the defendant was convicted of a "covered offense." Nothing more is required for the defendant to be eligible for relief. *E.g.*,

---

[2] One of the FSA's chief objectives was remedying the unjustifiable disparity in statutory sentencing ranges for crack cocaine versus powder cocaine. Prior to the FSA, quantity-based crack punishments compared to powder cocaine punishments at a ratio of 1:100; 50 grams of crack cocaine warranted the same statutory punishment tier as 5,000 grams of powder cocaine. Congress found that this discrepancy between the two substances' treatment had a disparate impact on African-American communities. *See, e.g.*, *Dorsey v. United States*, 567 U.S. 260, 268-69 (2012). The FSA decreased that ratio to 1:18. Pub. L. No. 111-220, 124 Stat 2372.

*United States v. Boulding*, 379 F. Supp. 3d 646, 651 (W.D. Mich. 2019) ("[E]ligibility under the language of the First Step Act turns on a simple, categorical question: namely, whether a defendant's offense of conviction was a crack cocaine offense affected by the Fair Sentencing Act."); *United States v. Burke*, No. 2:08-CR-63(1), 2019 WL 2863403, at *3 (E.D. Tenn. July 2, 2019) ("[T]he defendant is eligible for relief as to Count One under the First Step Act because he was convicted of a 'covered offense' under Section 404(a)'s definition.").

If the defendant is eligible for relief based on satisfying this single requirement, a court (namely, the one that sentenced him previously) may "impose a reduced sentence as if Sections 2 and 3 of the [FSA] were in effect at the time the covered offense was committed." § 404(b). Importantly, that is the relief (and the only relief) available under the First Step Act: "a reduced sentence . . . as if Sections 2 and 3 of the [FSA] were in effect at the time the covered offense was committed." However, "[n]othing in [Section 404] shall be construed to require a court to reduce any sentence pursuant to [that] section." § 404(c). Instead, the decision to impose a reduced sentence for an eligible defendant is within the court's discretion. *Boulding*, 379 F. Supp. 3d at 654 (First Step Act "leav[es] the Court with discretion to deny relief completely, or to tailor relief to fit the facts of the case."); *Burke*, 2019 WL 2863403, at *3 ("Because the defendant is eligible for relief, this Court has the discretion under 404(b) to impose a reduced sentence in accordance with the statutory penalties.") (internal quotation marks omitted).

Defendant contends that he is eligible for such relief, that he should receive it, and that 20 years' imprisonment is an appropriate reduced sentence. (*See* Doc. No. 113 at 1). The Government responds that no relief is due. (*See* Doc. No. 16).

## DISCUSSION

I. DEFENDANT'S ELIGIBILITY FOR A REDUCED SENTENCE UNDER THE FIRST STEP ACT

As detailed above, finding that a defendant was convicted of a covered offense is the prerequisite for First Step Act eligibility for a reduced sentence—in fact, the only one beyond the requirement that any court imposing the reduced sentence be the one that imposed the sentence originally. Only "violations" for which the statutory penalties changed under section 2 or 3 of the FSA are covered offenses. Section 2 of the FSA did change the penalties for 21 U.S.C. § 841(a)(1)—the statute Defendant was found guilty of violating—although it changed only the boundaries of the statute's punishment tiers (prescribed in Section 841(b)(1)) and not the punishments (maximum or minimum) within those tiers. The threshold for the lowest tier moved from (a) less than 5 grams to (b) less than 28 grams; the intermediate tier moved from (a) between 5 grams and less than 50 grams to (b) from between 28 grams and less than 280 grams; and the highest tier moved from (a) 50 grams and up to (b) 280 grams and up. *See* FSA § 2. Thus, a defendant's crime qualifies as a "covered offense" only if the quantity of crack underpinning the sentence puts him in a tier post-FSA that is different from the tier he was sentenced in pre-FSA.

Two approaches have emerged regarding the calculation of the quantity of crack courts are to use when determining whether a defendant was sentenced for a covered offense. The Government advocates for the "conduct-controls" theory,[3] as the Court will term it. Under this

---

[3] This was labeled the "offense-controls" theory in at least one case, *United States v. Blocker*, 378 F. Supp. 3d 1125, 1128 (N.D. Fla. 2019). "Conduct controls" more aptly captures what it is the Government believes is controlling in determining whether there is a covered offense: the defendant's conduct (*i.e.,* how much crack the defendant is responsible for as a factual matter for purposes of sentencing, given his conduct). By contrast, the Government does not believe that the "offense"—a term seemingly synonymous with "violation of a specific charged criminal statute"—controls. *Blocker,* which adopts this approach, seems to regard "offense" and "conduct" as synonymous, *see id.*, whereas courts adopting the other approach (discussed below) distinguish between "offense" and "conduct." *E.g., United States v. Dodd*, 372 F. Supp. 3d 795, 797 (S.D. Iowa 2019) ("The First Step Act, however, applies to offenses

view, the new FSA thresholds should be applied to the total crack quantity attributed to the defendant's conduct at the time of sentencing. That would be at least 1.5 kilograms in this case, per the Base Offense Level found at sentencing. (Doc. No. 72 at 41). The Government argues that, because the 1.5 kilograms of crack implicated by Defendant's conduct is well above both the original 50-gram threshold and the FSA's 280-gram threshold, his sentence would be no different "if [the FSA was] in effect at the time the covered offense was committed." (Doc. No. 111 at 6 (citing FSA § 4)). Therefore, according to the Government, no First Step Act relief should be afforded.

Defendant instead subscribes to the "conviction-controls"[4] theory, as the Court will term it. Under this view, a quantity established by a Presentence Report, stipulated as a factual basis for a plea agreement, or found by a sentencing judge is irrelevant; the FSA thresholds are instead applied to the quantity of crack alleged in the indictment (or information) containing the charge(s) upon which the defendant was convicted. In this case, both the indictment and conviction referenced only 50 grams of crack cocaine. Defendant argues that, because the grand jury and petit jury each passed only on allegations concerning 50 grams of crack cocaine, Defendant's prison

---

and not conduct.") Therefore, "conduct-controls" more clearly contrasts this approach's rationale with the opposing view than does "offense-controls".

[4] *Blocker* again labels this approach differently than does this Court, referring to it as the "indictment-controls" theory, 378 F. Supp. 3d at 1128. The different labels impart different emphases. The courts embracing this theory actually have tended to focus on the specification of crack quantity contained in the charge(s) on which the defendant was *convicted* (and sentenced), not the charges on which the defendant was *indicted*. True, the quantity of conviction usually matches the quantity alleged in the indictment. But this is not always true, and in any event what really matters here is the quantity of conviction; the fact that it tends to match the quantity alleged in the indictment is merely incidental in this context. Moreover, the fact that a defendant frequently is charged ultimately by information rather than indictment renders the moniker "indictment-controls" less apt than "conviction-controls." As discussed below, the majority of courts to have addressed the issue reject the conduct-controls approach and embrace this one not because a grand jury did not decisively allege a quantity that tracks the FSA thresholds in an *indictment*, but rather because a petite jury did not decisively find the threshold quantity when *convicting* (or, alternatively, because the defendant did not decisively admit the threshold quantity when submitting to *conviction* by guilty plea). The concern in attributing such quantities to a defendant is deprivation of a defendant's Sixth Amendment right to a jury trial (discussed below), not an insufficient indictment. Therefore, "conviction-controls" reflects the rationale of this theory more effectively than does "indictment-controls."

term would fall within the FSA's 28-280-gram punishment tier "if [the FSA was] in effect at the time the covered offense was committed." (Doc. No. 102 at 4 (citing FSA § 4)). This would expose Defendant to a mandatory minimum of 10 years imprisonment[5] in lieu of mandatory life.

The court agrees with Defendant and adopts the conviction-controls approach for several reasons. Firstly, the conviction-controls approach appears to be the prevailing interpretation of the law. *Compare, e.g.*, *United States v. Booker*, No. 07 CR 843-7, 2019 WL 2544247, at *2 (N.D. Ill. June 20, 2019) ("[N]early every court to address the issue agrees . . . eligibility for relief under the First Step Act is determined by the amount charged in the indictment, not the amount admitted in the plea agreement or found at sentencing."); *United States v. Martinez*, No. 04-CR-48-20 (JSR), 2019 WL 2433660, at *3 (S.D.N.Y. June 11, 2019) (collecting cases in favor of conviction-controls approach); *Burke*, 2019 WL 2863403, at *2 ("The [conduct-controls theory] is contrary to the weight of persuasive authority, both within and outside the Sixth Circuit."), *with, e.g., United States v. Blocker*, 378 F. Supp. 3d 1125, 1129 (N.D. Fla. 2019) ("The [conviction]-controls theory misreads the statute and is demonstrably inconsistent with Congress's intent."). Courts adopting the conduct-controls theory have been described as "cutting against the grain" and "outliers." *Martinez*, 2019 WL 2433660, at *3.

Some courts adopting the conviction-controls theory maintain that the question is how to construe the word "violation" included in Section 404's definition of covered offense, believing that eligibility for relief turns on whether the defendant's "violation . . . [was one] for which [the penalties] were modified" by the FSA. § 404(a). Such courts construe "violation" to refer to the

---

[5] Defendant calculated what his mandatory minimum would be under the FSA through the conviction-controls approach as 20 years; this is incorrect. As noted in *Dodd*, "unlike convictions under § 841(b)(1)(A), convictions under § 841(b)(1)(B) do not provide for further increases in the mandatory minimum for qualifying prior felony convictions beyond the first." 372 F. Supp. 3d at 797 n.1. The mandatory minimum for a violation in § 841's intermediate tier after any prior felony drug conviction is 10 years, not 20.

charge contained in the indictment (or information) upon which the defendant is convicted (by guilty plea or jury verdict)—not the facts of the criminal act itself. *See id.* at *2 ("'[V]iolation of a Federal criminal statute' refers to the amount charged in the indictment upon which [Defendant] was convicted, not the amount attributed to him by judicial finding."). While this is not necessarily the most intuitive reading of "violation" in the Court's view,[6] it is certainly colorable.

Other courts adopting the conviction-controls approach see it differently, believing that the phrase "the penalties for which were modified [by the FSA]" qualifies not the word "violation" but rather the phrase "Federal criminal offense" and that therefore eligibility for relief turns on whether the defendant was sentenced for violating a "Federal criminal statute, the penalties for which were modified" by the FSA. § 404(a). *See, e.g., United States v. Rose*, 379 F. Supp. 3d 223, 228 (S.D.N.Y. 2019) (opining that § 404(a)'s "penalties" clause modifies the phrase, "Federal criminal statute," immediately adjacent to it rather than the noun, "violation," further from it); *United States v. Graves*, No. 2:04-CR-070, 2019 WL 3161746, at *2 (E.D. Tenn. July 15, 2019) ("[T]he First Step Act uses the words 'the statutory penalties for which were modified by' to describe the immediately preceding words 'a Federal criminal statute.'"). For these courts, this interpretation dictates use of the conviction-controls approach because the key is the penalties associated with the defendant's statute of conviction, not the defendant's actual conduct as a whole. *E.g.*, *id.* Again, this rationale is entirely reasonable.

The majority view favoring the conviction-controls approach is supported not only by two

---

[6] According to one relevant and influential source, "violation" as "the act of breaking or dishonoring the law; the contravention of a right or duty," VIOLATION, Black's Law Dictionary (11th ed. 2019); it is the proscribed act itself, not the consequences of that act, *i.e.* potential indictment and prosecution. Under this definition, one can "violate" federal law without ever being discovered, apprehended, charged or convicted. It would seem to follow logically that "violation" refers to what one actually did in contravention of federal law, and in this case, that would be conspiring to distribute at least 1.5 kilograms of crack cocaine—even if that violation only begot a charge based on 50 of those grams. Were it not for the cited Sixth Circuit precedent indicating a different interpretation, this might be the view the Court would adopt.

7

sensible alternative reasonings, but also by a relevant Sixth Circuit opinion, *United States v. Hogg*, 723 F.3d 730 (6th Cir. 2013). In *Hogg*, the defendant had pled guilty pursuant to a plea agreement to a charge of possession with intent to distribute five grams or more of crack cocaine. *Id.* at 732. His offense occurred prior to the passage of the FSA but his sentencing occurred subsequently. *Id.* Although the plea was to a 5-gram charge, the defendant's plea agreement included his admission to possessing of 55.2 grams of crack in the factual basis for the plea agreement. *Id.* at 733. The Supreme Court subsequently ruled that all sentencing post-FSA was subject to the FSA's amendments to the penalties for a § 841(a)(1) violation, even if the violation occurred pre-FSA. *See Dorsey v. United States*, 567 U.S. 260, 280-81 (2012).

Thereafter, the defendant moved to withdraw his guilty plea, claiming that the FSA changed the applicable statutory tier for possession with intent to distribute five grams or more of crack. *Hogg*, 723 F.3d at 732. The Government there made an argument very similar to the one it makes here, *i.e.*, that the amount of crack the defendant's conduct actually involved supported the same sentence pre and post-FSA, irrespective of the amount alleged in the charge to which he pled guilty. *Id.* at 740-41. The court rejected this argument. *Id.* at 741. It acknowledged that the total amount attributed to the defendant's conduct is relevant for calculating a range under the sentencing guidelines, but it rejected the Government's attempt to retract its position (asserted earlier in the litigation) that "Defendant's statutory penalty range should be set by the charge to which he is pleading guilty, and not by the relevant conduct to which he admitted elsewhere in the plea agreement."[7] *Id.* at 742 (internal quotation marks omitted).

---

[7] The Court is aware that some of *Hogg*'s logic is inapplicable to the instant case as the court there was concerned with whether the defendant offered a knowing, voluntary, and intelligent guilty plea. But this does not diminish the applicability or soundness of *Hogg's* basic premise that when determining whether the FSA, as applied retroactively to an offense of conviction, lowers the statutory penalties for that offense, the Court should look to the charge for which the defendant is adjudged guilty (whether by guilty plea or jury verdict).

8

Analogously, *Hogg* directs this Court to consider, in the current context, the statutory penalties for the charge (including its allegations regarding crack quantity) on which he was convicted, not the statutory penalty corresponding to whatever quantity might be admitted by the defendant in a plea agreement, asserted as relevant conduct in his Presentence Report, or established at sentencing based on the entirety of his actual conduct.

This view is further bolstered by the Sixth Amendment requirement, announced by the Supreme Court in 2013, that any fact (other than the fact of a prior conviction) increasing a mandatory-minimum sentence must be found by a jury (or admitted by the defendant). *See Alleyne v. United States*, 570 U.S. 99 (2013). This requirement was a relatively new feature of the legal landscape upon which Congress imposed the First Step Act, and the conviction-controls approach fits in better with that *Alleyne*-shaped landscape than does the conduct-controls approach. *See United States v. Williams*, No. 08 CR 00401-4, 2019 WL 4014241, at *6 (N.D. Ill. Aug. 25, 2019) ("[*Alleyne*] provide[s] another clue that Congress intended 'covered offense' to refer to the crime of conviction—not the actual conduct determined by the judge at sentencing."); *United States v. Simons,* 375 F. Supp. 3d 379, 387 (E.D.N.Y. 2019) (rejecting the Government's invocation of the conduct-controls approach because, under *Alleyne,* "statutory penalties are determined by facts submitted to a grand jury, a trial jury, or established by a guilty plea").

But *Alleyne*'s role in the instant case goes far beyond merely supporting adoption of the conviction-controls approach generally. In fact, unless *Alleyne* is deemed applicable on Defendant's motion, it would make no difference "if sections 2 and 3 of the [FSA] were in effect at the time the covered offense was committed," because Defendant here *still* would be subject to life imprisonment. This is because even though sections 2 and 3 of the FSA would have raised (to 280 grams) the threshold amount necessary for Defendant to receive a mandatory minimum life

sentence, prior to *Alleyne* such amount need not have been alleged in the indictment or found by the jury (or admitted by the defendant); instead, it could have merely been proven by the Government at a sentencing hearing.[8] That is exactly what occurred here; the Government, though alleging (and having the jury pass on) only a threshold amount of 50 grams of crack, proved well over 280 grams at the sentencing hearing. Prior to *Alleyne*, this would have rendered Defendant subject to a mandatory minimum life sentence even using the FSA's threshold amount of 280 grams, even though this amount was neither alleged in the indictment nor validly established prior to the sentencing hearing. In that case, it could not be said that "if sections 2 and 3 of the [FSA] were in effect at the time the covered offense was committed," Defendant would (or even could) have received a lower sentence than the life sentence he received—meaning, arguably, that he would not be eligible for a reduced sentence under Section 404(b) given its particular language. Thus, arguably, and in the Government's view, the applicability of *Alleyne* is necessary for Defendant to be eligible for a reduced sentence.

The Court can see legitimate arguments both for and against applying *Alleyne* in this context. On the one hand, "by 2018 Congress knew that courts were no longer constitutionally permitted to impose mandatory minimums based solely on judicial fact-finding at sentencing. Congress would not have expected federal courts to then double-down on those unconstitutional findings." *Williams*, 2019 WL 4014241, at *5. On the other hand, Section 404(b) is aimed at the extending the FSA's fix of the historical disparity between punishments for crack cocaine and punishments for powder cocaine, and not at extending *Alleyne*'s fix of the historical denial of

---

[8] The Government accurately summarizes the difference between pre- and post-*Alleyne* law as follows: "In *Alleyne*, the Supreme Court overruled its previous decision in *Harris v. United States*, 536 U.S. 545, 122 S. Ct. 2406, 153 L.Ed.2d 524 (2002). In *Harris*, the Supreme Court had held that judicial factfinding that increases the mandatory minimum sentence does not violate the Constitution. *Harris*, 536 U.S. at 568–69, 122 S. Ct. 2406." (Doc. No. 111 at 8).

10

certain Sixth Amendment protections—protections that arguably should not be extended disproportionately to defendants convicted of crack offenses rather than the vast majority of defendants convicted solely of other crimes.

The Court concludes that it will follow what it perceives to be the significant weight of authority and apply *Alleyne* in the current context. *See, e.g., Graves*, 2019 WL 3161746, at *2 ("Further, this Court agrees with those cases which have rejected the United States' *Alleyne* argument. True . . . *Alleyne* do[es] not retroactively apply on collateral review, but the majority of courts to thus far consider the issue have concluded that [*Alleyne* is] nonetheless applicable to § 404."); *Dodd*, 372 F. Supp. 3d at 797-98 ("*Alleyne* [is] binding on this Court for sentencings held today. That [*Alleyne* does] not trigger a right to relief retroactively on collateral review is distinct from whether [it] appl[ies] to proceedings independently authorized under the First Step Act.") (citation omitted); *Burke,* 2019 WL 2863403, at *3 (collecting cases).

Here, because a jury determined Defendant to be responsible for only 50 grams or more of crack—*i.e.,* as little as 50 grams of crack—application of *Alleyne* counsels this Court to consider how application of the FSA would affect a sentence based on a crack quantity of 50 grams, not 1.5 kilograms. As indicated above, the FSA changed not the penalties associated with the sentencing tiers, but rather the amount of crack required to reach each of them.

Thus, the question is what sentencing tier would Defendant have been on based on 50 grams of crack had the FSA been in effect at the time of Defendant's sentencing. In other words, once the Court adopts the conviction-controls theory[9] and determines Defendant's "violation" was

---

[9] None of this is to say the conduct-controls theory is entirely without merit. As previously indicated, it arguably is more in line with the natural reading of the term "violation" in Section 404's definition of "covered offense." Although Defendant, and multiple courts, have decried conduct-controls as involving too much speculation as to what the Government might have done had the post-FSA thresholds been in effect at the time of the defendant's prosecution, there is no discernible reason to believe that the prosecutors who previously sought a mandatory life sentence and claimed to have proof that Defendant's conduct "conservatively" involved 2.835 kilograms of crack would not have alleged a quantity sufficient to reach the highest tier of § 841(b)(1). *Compare United States v. Pierre*, 372 F. Supp. 3d

conspiracy to distribute 50 grams of crack cocaine, the eligibility analysis under Section 404 becomes quite simple, requiring only a determination as to whether Defendant would have been on a lower tier using the FSA's thresholds. Section 2 of the FSA moved the threshold for § 841's highest punishment tier from 50 grams to 280 grams; this means Defendant's 50-gram charge would now be punished pursuant to the intermediate tier (28-280 grams), as opposed to the highest tier. The statutory penalty range for an intermediate tier offense, combined with Defendant's prior drug convictions established by the filing of an information, is 10 years to life in prison[10]—dramatically lower than Defendant's previous range of mandatory life. Defendant's crime, conviction and sentencing all occurred well before August 3, 2010. Accordingly, Defendant's sentence was one for a "covered offense." Thus, Defendant meets all the requirements for eligibility for relief from this Court under Section 404 of the First Step Act.

II. WHETHER AND TO WHAT EXTENT TO REDUCE DEFENDANT'S SENTENCE

As indicated above, even for eligible defendants, a sentence reduction in any amount is not automatic, as the Court has the discretion not to grant a reduced sentence. "Although the Act does not require a plenary resentencing proceeding, courts nevertheless consider the Section 3553(a)

---

17 (D.R.I. 2019) (raising uncertainty as to whether the defendant's quantity for purposes of relevant conduct (28.77 grams) on the borderline for the FSA's 28-gram tier would have been convicted on that tier or pled down to lower tier if prosecuted today). There is of course the question of whether the Government could have proved the higher amount, but at least one case subscribing to the conduct-controls theory called an evidentiary hearing to establish those facts, *Blocker* 378 F. Supp. 3d at 1132. The court also sees merit in the argument that the conviction-controls approach creates the exact type of arbitrary temporal-based sentencing disparities the First Step Act was meant to address— only in the opposite direction, *i.e.*, providing defendants who were indicted and convicted before the FSA's effective date with better outcomes than those who were indicted after the FSA went into effect and prosecutors knew what quantities to charge to reach a particular tier. *See id.* at 1129. Those like Defendant whose conduct implicated crack quantities above 280 grams, but whose indictments tracked the then-applicable statutory threshold of 50 grams, will now receive a chance at a reduced sentence merely because prosecutors could not have presciently foreseen the threshold changes in the FSA and charge accordingly. The Court believes this type of case may not have been within the legislative intent of the First Step Act. But the lack of statutory specificity on how the First Step Act is to be applied, the Sixth Circuit precedent assessing related arguments, and the generally recognized applicability of *Alleyne* in the First Step Act context all counsel the conviction-controls approach.

[10] *See* 21 U.S.C. § 841(b)(1)(B)(viii).

factors to determine whether a sentence modification is warranted." *United States v. Sorrell*, No. 07-20365, 2019 WL 4139398, at *1 (E.D. Mich. Aug. 30, 2019). Here, the Court concludes that several 3553(a) factors warrant a reduced sentence. First, for someone with Defendant's criminal history and offense of conviction, although a very stiff sentence may be appropriate to promote the sentencing objectives set forth at 18 U.S.C. § 3553(a)(2), the Court is confident that a life sentence is "greater than necessary" to achieve these purposes. 18 U.S.C. § 3553(a). Among other things, the Court believes that as the sentence gets longer and longer—decades long—there comes a point of diminishing return as to both general deterrence and specific deterrence. The Court also believes that the risk of recidivism for Defendant would be substantially lowered (due to ageing alone, if not additional factors) after decades in prison, such that a life sentence is not necessary to protect the public. Moreover, with a mandatory life sentence out of the equation, the Court can pronounce a sentence that is less than life, yet still within the advisory guideline range; such a sentence would both give the Guidelines their due and reduce a risk of sentencing disparity, and thus would reflect the factors set forth at 18 U.S.C. § 3553(a)(4) and (5).

The Court will not convene a plenary resentencing hearing on the matter, however, as § 404 relief does not warrant one. *See, e.g., United States v. Smith,* No. 1:07-cr-210, 2019 WL 3071940, at *1 (E.D. Mich. July 15, 2019) ("The Court finds that Defendant Smith is eligible for relief under the First Step Act, but that she is not entitled to a plenary resentencing."); *United States v. Terrell*, No. 2:09-CR-031, 2019 WL 3431449, at *4 (E.D. Tenn. July 29, 2019); *United States v. Davis*, No. 07-CR-245S (1), 2019 WL 1054554, at *2 (W.D.N.Y. Mar. 6, 2019) (holding the First Step Act does not authorize a plenary resentencing); *United States v. McKinney*, 382 F. Supp. 3d 1163, 1167-68 (D. Kan. 2019) (collecting cases); *United States v. Sampson*, 360 F. Supp. 3d 168, 171 (W.D.N.Y. 2019) ("a full resentencing is neither required nor called for [in the First Step Act

context].").[11] The decision to "impose a reduced sentence" under § 404 is considered an 18 U.S.C. § 3582(c)(1)(B) modification of a term of imprisonment, *see, e.g.*, *Davis,* 2019 WL 1054554 at *2, and thus need not be done in the presence of the defendant. *See* 18 U.S.C. § 3582(c)(1)(B); Fed. R. Crim. P. 43 (defendant's presence not required for § 3583(c) proceeding; *cf. Dillon v. United States*, 560 U.S. 817, 827 (2010) (holding § 3582(c)(2) proceedings are not plenary, and do not require a defendant's presence).

Even Defendant argues, at most, that a resentencing hearing "would be permissible and prudent," not required. (Doc. No. 112 at 6). And indeed, at best the district court has the discretion to hold a plenary resentencing. *United States v. Billups*, No. CR 3:00-00059, 2019 WL 3884020, at *2 (S.D.W. Va. Aug. 15, 2019). Assuming it has such discretion, the Court would decline to hold a plenary hearing, which Defendant presumably would use to raise numerous other sentencing factors under 18 U.S.C. § 3553(a), including rehabilitation in prison, having nothing to do with the purposes of § 404 or the objectives of resentencing under § 404. Although the Court does not begrudge any sentenced defendant seeking a second bite at the plenary sentencing apple, the Court will not allow Defendant such a bite when the vast majority of federal inmates get no such bite and are no less deserving of it (and no less likely to have a compelling case of, for example, rehabilitation) than federal inmates who happened to be eligible for relief under § 404.

Moreover, even absent a plenary resentencing, the Court believes itself fully capable of determining whether to extend at least some relief to Defendant. To that question, the answer is yes. The Court is able to determine, given that Defendant currently is facing a life sentence, that Defendant can be given substantial relief that is consistent with the spirit of the First Step Act and

---

[11] Even the one case the Court has found that affirmatively asserts § 404 enables an entirely new sentencing proceeding, *Dodd*, 372 F. Supp. 3d at 798, forgoes a full plenary resentencing consideration of all the 18 U.S.C. § 3553(a) sentencing factors; it instead merely pronounces a reduced sentence in the middle of the new guideline range, *id.* at 800.

yet not so great as to undermine the recognized goals of federal sentencing as a whole. A sentence substantially less than life can still serve, for example, to protect the public from further crimes of Defendant, deter Defendant and the public at large from this kind of criminal conduct, provide a great deal of just punishment, and reflect that the offense is serious indeed. In short, the Court has room to fashion an appropriate reduced sentence that is not too low, and the Court will do so here.

Although Defendant is eligible for reduction, the Court does not find a basis for granting his requested reduction to 20 years imprisonment. The Court believes that 30 years imprisonment, the bottom end of Defendant's guideline range in the absence of a mandatory life sentence, is instead an appropriate sentence, for several reasons. First, although the Court does not base Defendant's *eligibility* for relief on the total quantity of crack attributed to his conduct, that number will still weigh into its determination of the appropriate reduced sentence. *Cf. Pierre,* 372 F. Supp. 3d at 23 (noting that the First Step Act "favors . . . allowing the sentencing court to determine whether a specific defendant is entitled to relief given several factors, including the underlying drug quantity"). The court is hard pressed to believe that, had Defendant committed and been prosecuted for his crime today, the charge would not be at or above the new 280-gram highest tier threshold. That would put the statutory minimum for Defendant's crime at 25 years,[12] as Defendant concedes. (Doc. No. 112 at 4) ("[E]ven if he were indicted for more than 280 grams of crack today and duly convicted for 280 grams with two prior § 851 notices, his mandatory minimum sentence would be only 25 years, not life. 21 U.S.C. § 841(b)(1)(A) (providing for a penalty of 'not less than 25 years' when defendant has two prior drug offenses).").[13]

---

[12] Pursuant to the First Step Act § 401(a)(2)(A)(ii), the minimum for a violation in § 841's highest punishment tier after two prior convictions for "serious drug offenses" was reduced from life, the mandatory minimum defendant received, to 25 years. *See* 21 U.S.C. § 841(b)(1)(A)(viii). The maximum remains life. *Id.*

[13] At the time Defendant was convicted, sentencing enhancements for the highest tier, prescribed in 21 U.S.C. § 841(b)(1)(A), turned on whether the defendant had at least one, or at least two (as in Defendant's case), convictions for a "felony drug offense." Section 401(a) of the First Step Act replaced "felony drug offense" with "serious drug

15

A sentence below this 25-year minimum,[14] as Defendant has requested, would serve as an undue "windfall" to Defendant (due to the fact that he happened to commit the covered offense prior to the FSA's enactment) as compared to those prosecuted for similar conduct today. These defendants generally are facing indictments drafted specifically to allege a particular FSA threshold quantity corresponding to what the Government intends to prove at trial, and thus are subject to the corresponding mandatory minimum penalty— a result Defendant seeks to avoid even though there is every reason to believe that the Government could have alleged and proven the FSA quantity in this case if it understood at the time that it needed to do so.

One of the main authorities on which Defendant relies considers the "windfall" concern in the Court's exercise of its discretion. *United States v. Davis*, No. 4:92-cr-04013-WC-CAS-3 (N.D. Fla. Mar. 3, 2019). There, the court saw no danger of a windfall because it was shaving only 28 months off the existing sentence of 30 years. *Id.* at 13. Additionally, even that reduced sentenced was at least 20 years longer than what would have been the applicable mandatory minimum under either the conduct-controls or the conviction-controls theory. Thus, someone prosecuted today for that defendant's (Davis's) conduct could very well receive a sentence as low as the reduced sentence the court imposed—even if he or she were held to the full crack quantity attributed to Davis. Thus, Davis did not necessarily receive a windfall compared to the hypothetical defendant charged in the current, FSA era.

---

felony" in this statutory text. However, Defendant appears to concede that even under the narrower term, "serious drug offense," he has two qualifying convictions sufficient to trigger the 25-year mandator minimum under the FSA for the highest tier.

[14] To be clear, the relevant statutory range for assessing Defendant's *eligibility* for relief is, as discussed above, § 841(b)(1)'s intermediate tier of 10 years (rather than five years, assuming, as Defendant apparently has, that Defendant has at least one prior conviction for a "serious drug felony") to life. But this mandatory minimum of 25 years, likely to apply if Defendant hypothetically were recharged, re-prosecuted, re-convicted, and resentenced in present times, informs the Court's exercise of its discretion.

Conversely, here, Defendant asks that a life sentence be trimmed all the way to a 20-year sentence—a sentence 5 years below what would be statutorily-required for a defendant convicted today of a crime alleging even a mere one-fifth the full quantity of crack attributed to Defendant the first time. That would not be merely a *possible* windfall for Defendant as compared to today's defendants; that is a sentence *guaranteed* to be lower than that of a defendant convicted of the same amount today, just by virtue of having been convicted before the FSA under an indictment that did not happen to foretell the FSA. The First Step Act aimed to ensure older crack convictions ultimately are not unwarrantedly punished more harshly than newer ones; the court will not use the Act to facilitate the reverse.

Second, most of Defendant's rationales for his proposed 20-year sentence relate to post-sentencing rehabilitation and his age-based low recidivism risk. (Doc. No. 102 at 6). Any such rehabilitation is laudable and will inure to Defendant's benefit in ways that transcend the amount of his sentencing reduction. But as indicated above, the Court does not treat this motion as one for plenary resentencing, and therefore will not consider Defendant's factual allegations of rehabilitation since his original sentence, especially given that the vast majority of Defendants never receive—or even get to pursue—a reduced sentence based on such a rationale. As for his age-based arguments, the Court has considered them, since his current age is not in dispute and undeniably indicates that the need to protect the public from Defendant can be served by a shorter period of incarceration going forward than might be needed for a younger defendant. However, the Court believes that his lower-recidivism-based-on-advanced-age argument supports a reduction to 30 years far better than they support a reduction to 20 years.

Third, the guideline range recognized by Defendant, 360 months to life, is still applicable due to Defendant's career offender status and offense level. (Doc. No. 102 at 6 n.2; Doc. No. 112

at 6). Although not mandatory, as noted above the guideline range certainly informs this Court's decision, especially in a circumstance such as this, where plenary sentencing considerations are not warranted. The Court sees no reason to break from the guideline range in this case, especially as it starts only five years above the mandatory minimum sentence in a hypothetical case today involving an indictment alleging the same amount for which Defendant was found responsible at his sentencing in 2004. A bottom of the guideline range sentence of a 30 years' imprisonment is appropriate.

Finally, the Court believes that a 30-year sentence, which of course is substantially more serious than a 20-year sentence, better reflects Defendant's serious criminal history and better promotes the objectives set forth in 18 U.S.C. § 3553(a)(2)(A) and (B).

## CONCLUSION

For the aforementioned reasons, Defendant's Motion (Doc. No. 102) will be **GRANTED** and the Court will impose a reduced sentence of 30 years' imprisonment for the one count of conspiracy to distribute 50 grams or more of crack cocaine. All other provisions of the judgment will remain unchanged.

An appropriate order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE